897 P.2d 1366

**In re the MARRIAGE OF David Norris KELLS, Petitioner/Appellant/Cross–Appellee,**

**and**

**Alene Marie Kells, Respondent/Appellee/Cross–Appellant.**

**No. 2 CA–CV 94–0239.**

Court of Appeals of Arizona, Division 2, Department B.

Jan. 31, 1995.

Review and Cross–Petition for Review Denied July 11, 1995.

Mark & Pearlstein, P.A. by Lynn M. Pearlstein, Phoenix, for petitioner/appellant/cross-appellee.

Rawlins Burrus Lewkowitz & Feinstein, P.C. by R. Stewart Halstead, Rodger A. Golston and Christine A. Wigton, Phoenix, for respondent/appellee/cross-appellant.

## OPINION

DRUKE, Chief Judge.

Two issues are raised in this appeal from the dissolution of the marriage of David and Alene Kells. David contends that the trial court's child support award is unsupported by the evidence; Alene contends that the court incorrectly valued David's business interest. We agree with both contentions and reverse.

## CHILD SUPPORT AWARD

■ David and Alene were married in 1977 and have five children. David is a medical doctor, specializing in obstetrics/gynecology, with a gross income at the time of trial of approximately $415,000 annually, or $34,600 per month. Although this monthly income exceeded the Arizona Child Support Guidelines of $12,000 per month, David argued in his post-trial memorandum that the trial court "should apply the Guidelines Basic Child Support obligation calculated from a TWELVE THOUSAND DOLLAR ($12,000) per month income for five (5) children" and limit child support to approximately $2,718 per month. Alene, on the other hand, argued to the court that "[b]y extrapolating from the Guidelines, ... [David] would owe a basic child support obligation of approximately $7,824.00" per month. Notwithstanding these arguments, the court ruled that it was "obligated to make an award of child support '... based upon the facts of the individual case[,] ... consistent with the *theory* of the[se] Guidelines and the *factors* set out in ARS § 25–320,'" (quoting from the Guide-

lines; emphasis added), and concluded that "a child support award of $5,000 per month for the five minor children is appropriate." In support of its conclusion, the court found in pertinent part that "[d]uring trial [Alene] testified that the children's needs amount to $9,000 per month."

■ On appeal, David contends that Alene never gave such testimony, which Alene does not dispute and our own review of the record confirms. Accordingly, unless other evidence supports the court's award, it must be set aside as an abuse of discretion. *In re Marriage of Berger*, 140 Ariz. 156, 680 P.2d 1217 (App.1983).

Alene contends that the court's award is supported by her spousal affidavit, which shows that she and the children had expenses of over $9,000 per month. Although not offered or admitted in evidence, Alene argues that the affidavit could properly be considered by the court because: (1) Rule 6.4(b) of the Maricopa County Local Rules (MCLR), 17B A.R.S., requires the affidavit to be filed when child support will be an issue in a domestic relations trial; (2) the affidavit was "before the court" under MCLR 6.4(d); (3) the affidavit was filed with the pre-trial statement as required by MCLR 6.5(b); and (4) the court could take judicial notice of the affidavit. We find these arguments unpersuasive.

■ Alene first argues that the trial court could properly treat her spousal affidavit as testimony because it "should be considered as a trial affidavit" under MCLR 6.4(b). We disagree. Although MCLR 6.4(b) does bear the heading "Trial Affidavit," its text simply requires each party to *file* a spousal affidavit when child support will be an issue at trial. Nothing in the text expressly provides that the mere filing of the affidavit obviates the usual requirements for proof at trial, nor is that reasonably implied by the heading. It simply denotes one of the four circumstances when an affidavit must be filed under MCLR

6.4.[1] In none of those circumstances, except perhaps for default proceedings or uncontested matters, is there any suggestion that the affidavit has any greater evidentiary value than interrogatory answers or deposition testimony, both of which are given under oath but, absent agreement, may not properly be considered by the court without being offered in evidence. *See* Ariz.R.Civ.P. 32 and 33, 16 A.R.S.; Ariz.R.Evid. 613 and 801(d)(1) and (2), 17A A.R.S.

 Alene nevertheless argues that the affidavit was "before the court" because MCLR 6.4(d) provides in pertinent part that at trial, "a party may present to the court by way of testimony or amended affidavit any change in that party's financial circumstances." The rule is inapplicable here, however, because Alene's affidavit was never "present[ed] to the court." Reasonably construed, we believe this language means that the spouse who wants the court to consider the affidavit when child support is in issue must introduce it into evidence, rather than simply filing it with the clerk of the court, as was done here when the pre-trial statement was filed. MCLR 6.4(d) permits evidence of changed financial circumstances to be presented by either testimony or affidavit. If the former, the testimony is offered in evidence and subject to cross-examination. Nothing in MCLR 6.4(d) suggests that any less should be required if such evidence is presented by affidavit, and, as noted above, no lesser evidentiary requirement is established for the affidavit by our rules of evidence.

Alene next argues that the court could properly consider the affidavit because MCLR 6.5(d) requires it to be filed with the pre-trial statement when child support will be an issue at trial. For the reasons stated above, this argument is unpersuasive. Unless the affidavit is offered and admitted in evidence, it has no evidentiary value at trial absent the parties' agreement. No such agreement is asserted here and the record suggests a contrary conclusion. In the pre-trial statement, the parties simply listed their affidavits as exhibits along with such other exhibits as the appraisal of the parties' residence and the business valuations by their respective experts, and during trial, these latter exhibits were all offered and admitted in evidence.

 Alene further argues that the court properly took judicial notice of the affidavit. We disagree. The court could judicially notice only the procedural fact that the affidavit had been filed, not the truth of its assertions. *See Matter of Ronwin,* 139 Ariz. 576, 581, n. 4, 680 P.2d 107, 112, n. 4, *cert. denied,* 464 U.S. 977, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983) ("We take notice that the cases exist, that allegations are made, etc. We cannot and do not take notice of the truth or falsity of specific allegations except as established by final judgment."); *State v. Lynch,* 115 Ariz. 19, 22, 562 P.2d 1386, 1389 (App.1977) (proper to take judicial notice of procedural facts reflected in record, but not truth of testimony); Morris K. Udall et al., *Arizona Practice: Law of Evidence* § 152 (3d ed. 1991). Moreover, even if we assume the court took judicial notice of the affidavit, David was entitled "to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed" under Ariz. R.Evid. 201. This rule further states that "[i]n the absence of prior notification, the request may be made after judicial notice has been taken." Here, David filed a motion for reconsideration after the court's ruling, requesting

> to reopen solely for the purpose of offering Wife's deposition transcript which the Court has. If the Court were to grant the Motion to Reopen solely for the purpose of offering Wife's deposition transcript as an exhibit and read it, the Court would quickly ascertain that Wife's expenses were far less than $9,000.00 per month and that child support in the amount of $5,000.00

---

1. The affidavit must be filed when a temporary order is sought, MCLR 6.4(a), when trial is anticipated, MCLR 6.4(b), when a modification of support or maintenance is sought, MCLR 6.4(c), and when an order to show cause for contempt is heard, MCLR 6.4(e).

per month was excessive.... It would be manifestly unfair to consider the Spousal Affidavit, though not offered as an exhibit, without at least accepting Wife's deposition transcript as an exhibit and reviewing it.

This motion was denied by the court without explanation.

■ We therefore conclude that the filing of a spousal affidavit with the clerk of the court in Maricopa County has no evidentiary value in a domestic relations proceeding where child support is contested, unless the parties agree otherwise or the Maricopa County Local Rules expressly so provide, which they currently do not. Either circumstance would provide sufficient notice to the parties that the affidavit, unless controverted, could be considered by the court in determining child support, much like an uncontroverted affidavit can be considered by the court in determining a motion for summary judgment. *See* Ariz.R.Civ.P. 56(e), 16 A.R.S.

Alene also contends that even without her affidavit, other evidence the court considered supports the award, such as David's income, his expenses, the family's high standard of living, the absence of any extraordinary expenses for the children (other than counseling), and Alene's unemployment and lack of marketable skills. Although this evidence is relevant to some of the child support factors in A.R.S. § 25–320(A), it is not at all relevant to the first factor, "[t]he financial resources and needs of the child," nor is it relevant to a portion of the second factor, "[t]he financial ... needs of the custodial parent." The court thus determined David's child support obligation without any evidence regarding these two important statutory factors, and A.R.S. § 25–320(A) specifically mandates otherwise: "The ... criteria for deviation from [the guidelines] shall be based on *all* relevant factors...." (Emphasis added.) *See also Elliott v. Elliott,* 165 Ariz. 128, 796 P.2d 930 (App.1990).

For the foregoing reasons, we conclude that the child support award of $5,000 per month is unsupported by the evidence and must be reversed and remanded for redetermination consistent with A.R.S. § 25–320(A).

## BUSINESS VALUATION

■ In her appeal, Alene challenges the court's valuation of David's 5,000 shares of stock in Thomas–Davis Medical Center (TDMC), a large medical speciality group providing regional health care services. The court valued the stock at $21,048 by adopting the opinion of David's appraiser, Jeffrey Wright. Alene argues that because Wright's opinion of the stock's value was the value established by TDMC's redemption agreement, which Wright testified set a "completely arbitrary" value for the stock, the court abused its discretion in adopting his opinion. We agree.

In *Mitchell v. Mitchell,* 152 Ariz. 317, 732 P.2d 208 (1987), our supreme court addressed two marital dissolution issues: (1) Whether the wife had a community interest in the goodwill of her husband's professional practice and (2) if so, whether she was bound by the partnership agreement which established a zero value for the goodwill. On the first issue, the court held that "the goodwill of a professional practice has value, and it should be treated as property upon dissolution of the community, regardless of the form of business." *Id.* at 321, 732 P.2d at 212. As to the second issue, the court rejected the line of authority which holds that the value of the community's interest is governed by the partnership agreement, stating:

We believe the better approach is to consider the terms of the partnership agreement as one factor in the determination of the value of the community interest in goodwill without treating the agreement as conclusive. This approach recognizes that partnership agreements are designed to deal with particular aspects of the business, and simply do not address the considerations involved in valuation for a marital dissolution. Clauses which establish value of assets between partners may be only minimally relevant when a partner's business continues but the partner's marriage ends.

*Id.* at 321–22, 732 P.2d at 212–13 (citations omitted).

In this case, however, the court did not take this nonconclusive, "minimally relevant" approach. It ruled instead "that the Buy Sell Agreement is an appropriate, *controlling, legitimate* and *enforceable, good faith* and *binding* agreement and indicator of the parties' interest in TDMC." (Emphasis added.) The court erred in so ruling, especially in light of Wright's concession that the agreement's value for the stock was "completely arbitrary." The issue of valuation of David's stock in TDMC is therefore remanded to the trial court for further proceedings consistent with *Mitchell* and the recent decision of *Molloy v. Molloy*, 181 Ariz. 146, 151, 888 P.2d 1333, 1338 (Ct.App.1994) ("[V]aluation must be based on *realizable* benefits.").

Reversed and remanded.

ESPINOSA, P.J., concurs.

HATHAWAY, Judge, dissenting in part, concurring in part.

I respectfully dissent from the majority's disposition of the child support issue and concur in its disposition of the business valuation issue. The trial court appropriately considered the affidavit appellee filed pursuant to MCLR 6.4(b). Nothing in the rules prohibits the court from considering the information contained therein. Indeed, "[s]pousal affidavits ... may be considered by the court on the issues of payments and property divisions." Charles Marshall Smith and Irwin Cantor, *Arizona Practice–Marriage Dissolution Practice* § 226 at 225 (vol. 3, 1988). Moreover, appellant did not dispute the figures in the affidavit, despite his knowledge that it was before the court.

Furthermore, absent any consideration of appellee's affidavit, the trial court had sufficient basis to arrive at the $5,000 monthly support figure. Appellant suggested the amount of $2,718 per month, based on the Arizona Child Support Guidelines obligation calculated from a $12,000 monthly income for a family with five children, while appellee suggested $7,824 per month, based upon an extrapolation from the Guidelines to reach appellant's monthly income of $34,600, as the Guidelines do not encompass a monthly income exceeding $12,000. The court, in its discretion, looked at the facts of this case, and combined them with the theory of the Guidelines and the factors set out in A.R.S. § 25–320, as is appropriate. The introductory paragraph to the Guidelines specifically provides that "[c]hild support awards based upon income of ... greater than $12,000 per month shall be based on the facts of the individual case and shall be consistent with the theory of these Guidelines and the factors set forth in A.R.S. § 25–320." There is simply no evidence that the trial court abused its discretion in awarding $5,000 per month for child support.