NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

LISA MARIE CAMPBELL, *Petitioner/Appellee,*

*v.*

MARIO JAMAL STEPHENS, *Respondent/Appellant.*

No. 1 CA-CV 15-0830 FC
FILED 11-10-2016

Appeal from the Superior Court in Maricopa County
No. FC2011-000586
The Honorable Katherine Cooper, Judge

**VACATED AND REMANDED**

COUNSEL

Law Offices of Kimberly A. Staley, P.L.L.C., Peoria
By Kimberly A. Staley
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Justice Rebecca White Berch[1] joined.

---

**W I N T H R O P**, Judge:

¶1        Mario Jamal Stephens ("Father") appeals an order granting joint legal decision-making authority and unsupervised parenting time to Lisa Marie Campbell ("Mother").  For the reasons stated below, we vacate the award of joint legal decision-making and unsupervised parenting time and remand for further proceedings consistent with this decision.

## BACKGROUND

¶2        The parties have one child in common, born in 2007.  Until September 2012, the child lived with Mother and his older half-sibling.  In September 2012, the child's school called the Department of Child Safety ("DCS") when he arrived covered in bruises with a note from Mother stating he fell off a bicycle.  The child and his older brother were removed from Mother's care, and the child was placed with Father.  Mother admitted that both she and her then-husband had "whooped" the child with a belt as a punishment.  Mother was convicted of class six felony child abuse, and the court placed her on probation for ten years, beginning February 22, 2013.

¶3        In December 2012, the family court ordered that Mother not have parenting time with the child until further court order and awarded Father sole physical custody and legal decision-making authority ("the December 2012 order").[2]  Although Mother did not have any parenting time

---

[1]      The Honorable Rebecca White Berch, Retired Justice of the Arizona Supreme Court, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]      In explaining its order, the family court stated it had reviewed

> the photographs taken by the hospital where [the child] was treated.  The bruising is extensive and is all over the body of

with the child after this order, Father occasionally took the child to visit his half-brother and maternal grandmother. In May 2014, Mother filed a petition to modify, seeking in part joint legal decision-making and reasonable parenting time. Initially, Father opposed joint legal decision-making and any parenting time, but he later agreed that supervised parenting time in a therapeutic environment might be appropriate. The trial court and the parties attempted to set up therapeutic intervention sessions and family therapy but were unable to make the necessary arrangements. Mother eventually met with the child and his individual counselor twice—in March and September 2015—but, according to Mother, the expense prevented her from scheduling more frequent sessions.

¶4 On October 8, 2015, the family court held an evidentiary hearing on Mother's petition to modify. Mother testified she had regained custody of her older child, divorced her former husband, and completed domestic violence training as part of her probation. She also testified her two visits with the child went well, although she acknowledged the child's counselor had suggested she make appointments to meet with the counselor every other weekend as part of the reunification therapy.[3] Out

the minor child, including both legs, the back, the face[,] and both arms of the minor child. The extensive nature of the bruising, including cuts that appear to be inflicted by a belt buckle, or at least a cut that is consistent with the shape of a belt buckle, is noted on the minor child's left leg. The extensive bruising suggests to this Court that the number of times that the minor child was struck with the belt was considerabl[y] higher than the number attributed by Mother, who indicated that the child was hit ten to fifteen times. The extensive bruising would suggest[] that the number of strikes was much higher. The Court does not need to determine the extent to which the child was struck with the belt, the evidence is overwhelming, and Mother admits, that the child was beaten excessively. Mother admits, "that the beating got way out of hand." The Court is convinced that the injuries suffered by the minor child did not result from a simple corporal disciplinary act, but had well crossed over the line to physical abuse of the child based on the evidence that was presented to this Court.

[3] The child's counselor was unable to make a recommendation to the court at the hearing based on the two brief sessions he had observed.

of concern for the child's safety and emotional well-being, Father wanted to continue the reunification therapy for the child before Mother was awarded either supervised or unsupervised parenting time.

**¶5**          The family court awarded joint legal decision-making, with Father having the final say if the parties could not agree, and awarded Mother supervised parenting time seven hours a week. The court further ordered that, after approximately three-and-a-half months, Mother's parenting time would become unsupervised, and beginning June 5, 2016, the parties would share equal parenting time.

**¶6**          Father filed a timely appeal from the court's order.[4] We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2) (2016).[5]

## ANALYSIS

**¶7**          We review a modification of legal decision-making and parenting time for an abuse of discretion. *See Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7, 79 P.3d 667, 669 (App. 2003). When considering a petition to modify legal decision-making and parenting time, the court must first determine whether there has been a change in circumstances materially affecting the child's welfare, and if so, the court must then determine whether modification is in the child's best interest. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15, 311 P.3d 1110, 1113 (App. 2013). This requires the court to consider all relevant factors enumerated in A.R.S. § 25-403(A) (Supp. 2015). In this case, the court was also required to apply A.R.S. § 25-403.03 (Supp. 2015) because of Mother's child abuse conviction.

### I.    *Legal Decision-Making*

**¶8**          Pursuant to A.R.S. § 25-403.03(A), the court shall not award joint legal decision-making if it finds "the existence of significant domestic violence pursuant to [A.R.S.] § 13-3601 [(Supp. 2015)] or if the court finds

---

[4]      Mother did not file an answering brief. In the exercise of our discretion, we decline to treat this failure as a confession of reversible error and address the merits of the legal decision-making and parenting time issues. *See Gonzales v. Gonzales*, 134 Ariz. 437, 437, 657 P.2d 425, 425 (App. 1982).

[5]      Absent any material revisions after the relevant date, we cite the current version of the statutes.

by a preponderance of the evidence that there has been a significant history of domestic violence." The court made no specific findings under § 25-403.03(A), but stated it had "considered the history of child abuse in this case," reviewed the December 2012 order, and considered the evidence and testimony. The December 2012 order detailed the September 2012 incident and another 2012 incident in which Mother's former husband abused the child. Additionally, the family court found Mother was on probation for class six felony child abuse.[6]

¶9 In this case, Mother's history of abuse, including her felony child abuse conviction pursuant to A.R.S. § 13-3623 (2010),[7] raises a question whether an award of joint legal decision-making is precluded under A.R.S. § 25-403.03(A). *See Hurd v. Hurd*, 223 Ariz. 48, 51, ¶ 12, 219 P.3d 258, 261 (App. 2009) (recognizing that a finding of "significant domestic violence" pursuant to § 13-3601 precludes an award of joint legal decision-making under § 25-403.03(A)). Unlike the rebuttable presumption against awarding sole or joint legal decision-making to a parent who has committed "an act of domestic violence against the other parent," *see* § 25-403.03(D), where the court finds "significant domestic violence pursuant to § 13-3601" or a "significant history of domestic violence," the court is prohibited from awarding that parent sole or joint legal decision-making. *See* A.R.S. § 25-403.03(A). Before awarding Mother joint legal decision-making, the court was required to consider whether such an award was precluded under

---

6     The December 2012 order also stated that "Mother's problems with striking the children is not based solely on this incident. As the [DCS] records note, Mother has been involved in other actions, one involving [the child's older half-brother] and another involving an older child as well." The court noted that, in October 2009, the child's older half-brother "disclosed that Mother punched him all over his body," and he had a bruise on his wrist because "Mother was holding him by the wrist as she was punching him." Additionally, the court noted that Mother had two prior criminal matters (in 1995 and 2003) resolved by plea agreements — one involving assault, and the other involving "disorderly conduct, contributing to the delinquency of a dependent minor, and violation of a promise to appear" — and found these earlier criminal actions, although "dated," tended to "show a trend with respect to Mother's tendency towards physical confrontation."

7     We may take judicial notice of Mother's criminal conviction. *See State v. Lynch*, 115 Ariz. 19, 22, 562 P.2d 1386, 1389 (App. 1977) (recognizing that courts may "take judicial notice of procedural facts reflected in the record of another superior court action").

A.R.S. § 25-403.03(A). Accordingly, we vacate that portion of the order and remand for the court to consider and make appropriate findings relative to the applicability of § 25-403.03(A).

## II. *Parenting Time*

**¶10** Father concedes that Mother should renew her relationship with the child in a therapeutic environment, with the allowance of some supervised parenting time. However, he contends the evidence does not support the relatively quick transition from supervised parenting time to some unsupervised parenting time to equal unsupervised parenting time.

**¶11** Where, as here, "the court finds that a parent has committed an act of domestic violence, that parent has the burden of proving to the court's satisfaction that parenting time will not endanger the child or significantly impair the child's emotional development." A.R.S. § 25-403.03(F). Thus, pursuant to subsection (F), a finding of domestic violence does not automatically preclude an award of parenting time; however, "[t]he court shall consider the safety and well-being of the child and of the victim of the act of domestic violence to be of primary importance." A.R.S. § 25-403.03(B).[8] Additionally, § 25-403(B) requires the court to make specific findings on the record as to all relevant § 25-403(A) factors *and* the reasons why the parenting time order is in the child's best interest. *Owen*, 206 Ariz. at 421, ¶ 9, 79 P.3d at 670.

**¶12** The court did not make specific findings regarding § 25-403.03(F), *see generally Christopher K.*, 233 Ariz. at 301, ¶ 19, 311 P.3d at 1114, or explain how it weighed the § 25-403 factors to conclude that the unsupervised parenting time schedule was in the child's best interest. Under § 25-403.03(F), Mother had the burden of proving that unsupervised parenting time will not endanger the child or significantly impair his emotional development. Based on the evidence in the record and the trial court's lack of detailed findings, we cannot tell whether Mother met this burden.

**¶13** The child's counselor provided no information to the court regarding the two interactions between Mother and the child, and Mother did not arrange for any additional therapeutic counseling outside of the child's individual counselor. Further, there was no court-ordered custody

---

[8] The court shall also "consider a perpetrator's history of causing or threatening to cause physical harm to another person." A.R.S. § 25-403.03(B).

evaluation or parenting conference report, and the court had no independent evaluation regarding the child's interactions with Mother.

¶14        Mother testified that the two visits went well. However, Father testified that the child "still remembers" the abuse, and after the child visits Mother or her family members, the child becomes "emotional" and "mad" and will not listen. This behavior is consistent with the child's behavior in 2012, when he began acting up after Mother spoke to him on his half-brother's cell phone, ostensibly in violation of court orders.

¶15        In considering its award of joint legal decision-making, the court found "Mother has taken appropriate steps to address her prior conduct and has custody of her other minor child." Although Mother divorced the husband who also abused the child on two occasions in 2012, Mother herself seriously abused the child. Mother completed domestic violence training as a condition of her probation, regained custody of the child's older half-sibling, and reports that older child is doing well in her care; however, that child is a teenager and was only removed from Mother's home for eight months. More importantly, the record does not indicate that Mother inflicted the severe abuse on the child's older half-brother that she inflicted on the child. At the time of the hearing, the parties' child was eight years old and had only spent *two supervised hours* with Mother in the past *three years*.

¶16        In its order, the family court addressed the § 25-403(A) factors; however, the findings do not necessarily relate to or otherwise explain the reasons why the court concluded it was in the child's best interest for Mother to exercise unsupervised parenting time after only a few months without any reunification therapy or other counseling. We also note the lack of any evidence from a mental health provider regarding what effect transitioning from three years of almost no contact to weekly parenting time will have on the child. Additionally, the court did not appear to explicitly consider the behavioral problems the child experienced after having contact with Mother.

¶17        The court was required to set forth on the record the reasons its decision is in the child's best interest. *See* A.R.S. § 25-403(B). The trial court's failure to specify the reasons why unsupervised parenting time is in the child's best interest as required by A.R.S. § 25-403(B) is an abuse of discretion. *See Hurd*, 223 Ariz. at 51, ¶ 11, 219 P.3d at 261. Based on the evidence in the record, we cannot conclude Mother met her burden of proving unsupervised parenting time with no reunification therapy was in the child's best interest and would not endanger the child or impair his

emotional development.[9]  *See* A.R.S. §§ 25-403(B), -403.03(F).  Accordingly, we vacate the order granting unsupervised parenting time and remand for the family court to reconsider the parenting time orders based on any additional evidence the court, in its discretion, permits the parties to provide.  On remand, any orders for supervised or unsupervised parenting shall be based on specific findings in the record consistent with A.R.S. §§ 25-403(B) and 25-403.03(F).

## CONCLUSION

**¶18**　　　　We vacate the family court's legal decision-making and parenting time orders and remand for further proceedings consistent with this decision.  As the successful party, Father is entitled to an award of costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.  *See* A.R.S. § 12-342 (2016).



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[9]　　　At the hearing, the family court acknowledged the importance of reunification or family therapy; however, the final order did not include any such provision.